# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Lamon Weathers (Y-32586), ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22 C 50293 |
| v. ) | |
| ) | Hon. Iain D. Johnston |
| Sergeant Ferguson and Officer Emmole, ) | |
| ) | |
| Defendants. ) | |

## ORDER

The Court denies Plaintiff's motion to change venue and recuse [29], denies his renewed motion for attorney representation (included in [29]) without prejudice to resubmission after the Defendants have been served and have responded to his pleading, and grants his motion for leave to submit a second amended complaint [30]. The Clerk is directed to: (1) file the second amended complaint [30-1] as a separate entry on the docket; (2) issue summonses for service on Sergeant Ferguson and Officer Emmole; (3) correct the docket to reflect that Sergeant Ferguson is the lead defendant and he and Officer Emmole are the only active defendants; and (4) forward the completed USM-285 service forms for Sergeant Ferguson and Officer Emmole ([28], pgs. 2 and 7) to the Marshals Service. The Marshal is appointed to effect service and is authorized to send requests for waiver of service in the manner prescribed by Fed. R. Civ. P. 4(d) before attempting personal service. Plaintiff is reminded that he must promptly update his address if it changes while this case is open. Failure to comply will subject this case to dismissal with no further warning.

## STATEMENT

State prisoner Lamon Weathers initiated this *pro se* lawsuit under 42 U.S.C. § 1983 concerning alleged events at the Dixon Correctional Center. Following protracted proceedings concerning Plaintiff's fee status, the Court allowed him to pay the fee over time but warned him that moving forward, he would almost certainly be ineligible to pay the fee in installments if he received enough income from any source to pay the $402 fee in the future and was aware of the factual basis of a lawsuit but spent his money on discretionary items. Dkt. 18.

The Court extended the date to submit an amended complaint three times due to Plaintiff's move, its receipt of an apparently incomplete amended complaint, and a request from Plaintiff. Dkt. 20, 22, 26. Plaintiff then submitted an amended complaint, Dkt. 27, a motion to change venue and recuse, Dkt. 29, and a motion for leave to submit another amended complaint, Dkt. 30, which he attached, Dkt. 30-1.

I.      **Motion To Recuse & Renewed Request for Counsel**

The Court begins with Plaintiff's motion to change venue and recuse, which it construes as a motion to recuse since venue is proper in this judicial district given that the alleged events underlying this lawsuit allegedly happened at Dixon. Plaintiff alleges that the Court failed to "show[] any pro se leniency" and "participated in gross negligence" in connection with his fee status. Dkt. 29, pg. 1. According to Plaintiff, the fact that the Court originally denied leave to proceed *in forma pauperis* (IFP) and then granted a motion to reconsider and allowed him to proceed IFP shows bias because "the second time he grants it" shows that "it was good enough to be granted the first time." *Id.*, pg. 2. Plaintiff also claims at length that he was the victim of mail tampering and related misconduct at Dixon. *Id.*, pgs. 3-6. Finally, he asks the Court to recruit counsel for him because he cannot otherwise "go up against" the Court, "who continues to show malicious act," or address alleged misconduct by Dixon correctional officials. *Id.*, pgs. 6-7.

Two statutory provisions—28 U.S.C. §§ 144 and 455—govern recusal. Section 144 requires recusal when a judge "has a personal bias or prejudice." Recusal under § 144 "is required only if actual bias or prejudice is proved by compelling evidence." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1025 (7th Cir. 2000) (citation omitted). "[S]imple conclusions, opinions, or rumors are insufficient." *Tezak v. U.S.*, 256 F.3d 702, 717 (7th Cir. 2001). Adverse decisions do not warrant recusal under § 144. *See Liteky v. United States*, 510 U.S. 540, 555 (1994).

Section 455(a) requires recusal when the Court's "impartiality might reasonably be questioned." This is an "objective inquiry" that looks to whether a reasonable person perceives a significant risk that the judge "will resolve the case on a basis other than the merits." *Wereko v. Rosen*, No. 22 C 02177, 2022 WL 16573746, at *2 (N.D. Ill. Nov. 1, 2022) (quoting *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996)). Put another way, the Court must consider "how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." *Id.* In turn, § 455(b)(1)—like 28 U.S.C. § 144—requires recusal if a judge "has a personal bias or prejudice concerning a party." Relief under § 455(b)(1) requires the movant to establish "actual bias or prejudice" with evidence that is "compelling" when viewed from a reasonable person's perspective. *Hook*, 89 F.3d at 355.

Plaintiff's recusal request is based on the incorrect premise that rulings he does not like demonstrate bias. Adverse rulings alone, however, do not establish judicial bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Plaintiff's conclusory claims of bias and his disagreement with the Court's IFP rulings thus do not warrant recusal. The Court adds that its order reconsidering its earlier denial of IFP status demonstrates that it has carefully considered all of Plaintiff's submissions and granted relief when warranted. Put another way, Plaintiff submitted additional arguments after receiving a ruling and the Court accepted those arguments. That is precisely what happens when a litigant submits a well-supported motion to reconsider, despite Plaintiff's characterization of the eventual granting of IFP status as somehow nefarious. *See*, *e.g.*, *Smith v. Tritt*, No. 19-CV-599-JPS, 2019 WL 2617831, at *3-4 (E.D. Wis. June 26, 2019) (denying motion to recuse as "the issues Plaintiff cites are completely mundane, from a perceived lack of

explanation from the Court in dismissing certain claims, to the Court's handling of his request for law library access, to the Court's purported failure to disclose Frame's summary judgment brief").

Plaintiff's motion for recusal is thus denied. The Court has been and will continue to be fair and impartial in considering this case. Plaintiff is also placed on notice that dissatisfaction with a ruling does not excuse conduct that demonstrates "a lack of respect for the court or proceedings" or "vitriol and frivolous accusations" about the Court. *See White v. Williams*, 423 Fed. App'x 645, 647 (7th Cir. 2011) (collecting cases). Plaintiff must bear this in mind when preparing further submissions, in both this case and any other cases he is pursing now or may pursue, as inappropriate conduct may lead to dismissal of this lawsuit or other sanctions.

With respect to Plaintiff's renewed request for counsel, his motion does not show that he has made a reasonable attempt to locate his own attorney. *See Eagan v. Dempsey*, 987 F.3d 667 (7th Cir. 2021) (whether an indigent litigant has made a reasonable attempt to obtain his own attorney is a "mandatory, threshold inquiry"). In any event, despite the constraints of incarceration and Plaintiff's representation that other prisoners have assisted him, Plaintiff has prepared submissions that demonstrate that he can understand orders, summarize events within his personal knowledge, and express his position in an understandable way.

Accordingly, Plaintiff's renewed request for counsel is denied without prejudice to resubmission after the Defendants have been served and have responded to his pleading. Before again renewing his motion, Plaintiff must seek pro bono (free of charge) legal assistance by writing attorneys, law firms, or organizations and describing his claims. Any renewed motion must identify the attorneys or organizations he contacted, attach copies of any correspondence he sent (an exact handwritten copy is acceptable if he cannot obtain a photocopy), and summarize the responses he received.

## II. Plaintiff's Amended Complaint

Plaintiff submitted a handwritten complaint that largely tracks the Court's mandatory form complaint but is not on the Court's form. Pursuant to the Court's Local Rules, *pro se* complaints "brought under the Civil Rights Act, 42 U.S.C. § 1983, by persons in custody shall be in writing, signed and certified" and "shall be on forms supplied by the Court." *See* N.D. Ill. L.R. 81.1. The Court declines to strike Plaintiff's complaint but advises Plaintiff that he may not be allowed to proceed with any further complaints that are not on the form. With that said, the Court turns to Plaintiff's pleading.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court must screen a *pro se* inmate's complaint to ensure that it states a valid claim against a defendant who is not immune from liability. *See Jones v. Bock*, 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). A complaint need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570). The Court assumes the truth of all well-pleaded factual allegations, *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013), and construes *pro se* complaints liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff's most recent amended complaint names Officer Emmole and Sergeant Ferguson as Defendants. It is significantly narrower than his prior complaints as it (among other things) removes references to a shank that fellow prisoner Demetrius Golden purportedly placed in Plaintiff's cell and the subsequent disciplinary proceedings; Plaintiff also did not attach grievances and related documents that he previously submitted.

Plaintiff now alleges that in the early morning hours of October 8, 2021, he gave Officer Emmole "a kite [in other words, a note] addressed to Internal Affairs and all present security staff to read because he was afraid that prisoner Demetrius Golden would take action against him." Dkt. 30-1, pg. 2. Officer Emmole confirmed "that he had read the kite and alerted his [chain] of command about the [situation]." *Id*. Later that morning, Officer Emmole and Sergeant Ferguson opened cell doors to hand out breakfast trays "instead of using the food passage." *Id*. Because Golden and Plaintiff were housed in adjoining cells, this "seemingly allow[ed] prisoner Golden to enter Plaintiff cell unobstructed." *Id*. Plaintiff screamed as Golden attacked him. *Id*., pg. 3. However, "neither officer came in the cell to try to stop the assault. Instead without warning [Sergeant Ferguson] discharged pepper spray into Plaintiff['s] cell striking him about his face and body." *Id*.

According to Plaintiff, Sergeant Ferguson "used unnecessary force by spraying Plaintiff who was already being assaulted." *Id*. Plaintiff contends that Officer Emmole and Sergeant Ferguson (presumably, as Plaintiff refers to Golden) failed to protect him because they gave Golden a chance to attack him despite his kite by opening cell doors when handing out breakfast trays. *Id*., pgs. 3-4. Plaintiff also asserts that Officer Emmole and Sergeant Ferguson should be held liable for failure to intervene to stop Golden's attack and Sergeant Ferguson should be held liable for using pepper spray (Plaintiff says here that Officer Emmole and Sergeant Ferguson both used pepper spray but his factual allegations specify that Sergeant Ferguson deployed the pepper spray). *Id*.

Pursuant to the Eighth Amendment, prison officials may be liable if they are deliberately indifferent to a risk that an inmate will be attacked by another inmate. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1988). However, a constitutional violation does not occur "every time an inmate gets attacked by another inmate" as correctional facilities "after all, are dangerous places often full of people who have demonstrated aggression." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Instead, a prison official may be held "liable for failing to protect an inmate from another prisoner" if he "knows of and disregards an excessive risk to inmate health or safety" based on "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015) (collecting cases, citations omitted).

Plaintiff's claim that he gave Officer Emmole a kite with a sweeping claim that "he was afraid that [Golden] would take action against him," his allegation that his cell was next to Golden's cell, his representation that Officer Emmole told him that he had shared unspecified information with "his [chain] of command" (Sergeant Ferguson, given the rest of Plaintiff's pleading), and his contention that Golden rushed over and began to beat him up a few hours after Plaintiff submitted the kite are thin. However, when the Court construes his allegations liberally—as it must do at screening—his description of events is arguably sufficient to allow his failure to protect claims against Officer Emmole and Sergeant Ferguson to proceed for factual investigation.

The rest of Plaintiff's allegations, however, are not actionable as they are currently described. Plaintiff may understandably want correctional staff to have an absolute duty to intervene in all circumstances, but this is not the law. Faced with the type of violence that Plaintiff described, staff may—without violating the Constitution—generally "call[] for back-up and wait[] for it to arrive, rather than jump into the fray" themselves. *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018) (per curiam). Put another way, Plaintiff's allegation that Officer Emmole and Sergeant Ferguson saw Golden attack him and failed to intervene does not, without more, suggest that Officer Emmole and Sergeant Ferguson were *constitutionally required* to intervene.

Of course, even though Plaintiff claims that Sergeant Ferguson failed to intervene, he has also inconsistently alleged that Sergeant Ferguson in fact did intervene by obtaining and deploying pepper spray during the attack. Plaintiff appears to be taking issue with the fact that the pepper spray was not confined to Golden. His negative feelings about what must have been a distressing incident are understandable and valid.

Nevertheless, there is no absolute right to be free from exposure to chemical agents while incarcerated. *See Lindsey v. Boughton*, No. 17-CV-52-JDP, 2018 WL 3824143, at *5 (W.D. Wis. Aug. 10, 2018) (collecting cases applying the Eighth Amendment). Thus, Sergeant Ferguson's attempt to stop Golden's attack in the close quarters of Plaintiff's cell does not implicate constitutional concerns despite Plaintiff's exposure to overspray during the rescue effort. *See id*. (rejecting excessive force claim based on pepper spray fumes that spread from an adjacent area after correctional officials subdued another inmate even though "[u]nfortunately, the pepper spray spread to Lindsey's cell and Lindsey was affected too."); *see also Redmond v. Crowther*, 882 F.3d 927, 933-34 (10th Cir. 2018) (deployment of tear gas in response to an agitated prisoner who had locked himself in the recreation yard and was threatening guards was not actionable under the Eighth Amendment even though the chemical inadvertently spread through an air intake vent to an entire wing of prisoners); *Gibson v. Woodford*, No. 106-CV-1805-BLW-MHW, 2010 WL 596228, at *3 (E.D. Cal. Feb. 16, 2010) (rejecting excessive force claim brought by inmate who was exposed to pepper spray used to control another inmate who was trying to attack guards); *Simmons v. Everett*, No. 3:07CV172, 2008 WL 3843455, at *4 (E.D. Va. Aug. 15, 2008) (rejecting excessive force claim brought by a bystander prisoner who was struck by a stray rubber pellet as guards attempted to quell a disturbance).

### III. Conclusion and Guidance

In sum, Plaintiff may proceed with Eighth Amendment failure to protect claims against Officer Emmole and Sergeant Ferguson but all other claims are dismissed without prejudice. The Court provides the following information to all inmates, it is not specific to Plaintiff. Plaintiff eventually will be required to *prove* his allegations as he is entitled to a presumption that his allegations are true only at this early stage of the litigation. As Plaintiff decides how to proceed, he is warned that he is subject to Federal Rule of Civil Procedure 11, which provides that by signing a pleading, a party represents to the Court, among other things, that his factual contentions have evidentiary support or likely will have evidentiary support after further investigation. *See* Fed. R. Civ. P. 11(b). If any of his submissions contain or contained knowing factual misrepresentations, he may be subject to sanctions.

The Court directs the Clerk to issue summonses for service of the complaint on Officer Emmole and Sergeant Ferguson and forward the completed USM-285 service forms for these individuals to the Marshals Service. The Marshal is appointed to effect service. The Court directs the Marshal to make all reasonable efforts to do so. If Defendants can no longer be found at the work address provided by Plaintiff, correctional officials must furnish the Marshal with their last-known address. The Marshal will use the information only for purposes of effectuating service or to show proof of service and any documentation of any address shall be retained only by the Marshal. Address information will not be maintained in the Court file nor disclosed by the Marshal, except as necessary to effect service. The Marshal is authorized to send a request for waiver of service in the manner prescribed by Federal Rule of Civil Procedure 4(d) before attempting personal service.

The Court instructs Plaintiff to file all future papers concerning this action with the Clerk in care of the Prisoner Correspondent. Every document submitted by Plaintiff must include a certificate of service indicating the date that he gave the document to correctional authorities for mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the Court or returned to Plaintiff. Plaintiff is reminded that while this case is open, he must promptly submit a change-of-address notification if he is transferred to another facility or released. If he does not comply, this case will be subject to immediate dismissal with no further warning.

Date: July 5, 2023        By: _____
                              Iain D. Johnston
                              United States District Judge